RECORD NO. 16-1677

IN THE

# United States Court of Appeals
## FOR THE FOURTH CIRCUIT

EVE M. DAVIS,

*Plaintiff - Appellant,*

v.

WALMART STORES EAST, L.P;
BRENDA GREER,

*Defendants - Appellees.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA AT RICHMOND

**RESPONSE BRIEF OF APPELLEES**

W. Bradford Stallard
(VSB No. 28149)
PENN, STUART & ESKRIDGE
208 East Main Street
Post Office Box 2288
Abingdon, Virginia 24212-2288
(276) 628-5151 Telephone
(276) 628-5621 Facsimile
bstallard@pennstuart.com

Terrence L. Graves
(VSB No. 32705)
Christopher K. Jones
(VSB No. 75051)
SANDS ANDERSON PC
1111 East Main Street, Suite 2400
Richmond, Virginia 23218
(804) 648-1636 Telephone
(804) 783-7291 Telefax
tgraves@sandsanderson.com
cjones@sandsanderson.com

*Counsel for Appellee*
*Brenda Greer*

*Counsel for Appellee*
*Walmart Stores East, L.P.*

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case. In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form. Counsel has a continuing duty to update this information.

No. __16-1677__        Caption: __Eve M. Davis v. Walmart Stores East, L.P., et al__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__Brenda Greer__
(name of party/amicus)

_____

who is _____appellee_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.    Is party/amicus a publicly held corporation or other publicly held entity?  ☐ YES ☑ NO

2.    Does party/amicus have any parent corporations?                            ☐ YES ☑ NO
      If yes, identify all parent corporations, including all generations of parent corporations:

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or
      other publicly held entity?                                               ☐ YES ☑ NO
      If yes, identify all such owners:

4. Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?  ☐YES ☑NO
If yes, identify entity and nature of interest:

5. Is party a trade association? (amici curiae do not complete this question)  ☐YES ☑NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6. Does this case arise out of a bankruptcy proceeding?  ☐YES ☑NO
If yes, identify any trustee and the members of any creditors' committee:

Signature: _____   Date: **6/22/2016**

Counsel for: Brenda Greer

## CERTIFICATE OF SERVICE
****************************

I certify that on _____June 27 2016_____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

_____
(signature)

_____6/27/2016_____
(date)

- 2 -

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case. In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form. Counsel has a continuing duty to update this information.

No. <u>16-1677</u>       Caption: <u>Eve M. Davis v. Wal-Mart Stores East, L.P. et al.</u>

Pursuant to FRAP 26.1 and Local Rule 26.1,

<u>Wal-Mart Stores East, L.P.</u>
(name of party/amicus)

_____

who is _____<u>appellee</u>_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.    Is party/amicus a publicly held corporation or other publicly held entity?    ☐ YES ☑ NO

2.    Does party/amicus have any parent corporations?    ☑ YES ☐ NO
      If yes, identify all parent corporations, including all generations of parent corporations:
      Wal-Mart Stores, Inc.

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or
      other publicly held entity?    ☑ YES ☐ NO
      If yes, identify all such owners:
      Wal-Mart de Mexico, S.A. de C.V.

08/05/2015 SCC                              - 1 -

4.  Is there any other publicly held corporation or other publicly held entity that has a direct
    financial interest in the outcome of the litigation (Local Rule 26.1(b))?    ☐ YES ☑ NO
    If yes, identify entity and nature of interest:

5.  Is party a trade association? (amici curiae do not complete this question)    ☐ YES ☑ NO
    If yes, identify any publicly held member whose stock or equity value could be affected
    substantially by the outcome of the proceeding or whose claims the trade association is
    pursuing in a representative capacity, or state that there is no such member:

6.  Does this case arise out of a bankruptcy proceeding?    ☐ YES ☑ NO
    If yes, identify any trustee and the members of any creditors' committee:

Signature: _____        Date: _6-28-16_

Counsel for: Wal-Mart Stores East, L.P.

## CERTIFICATE OF SERVICE
**************************

I certify that on ___June 28, 2016___ the foregoing document was served on all parties or their
counsel of record through the CM/ECF system if they are registered users or, if they are not, by
serving a true and correct copy at the addresses listed below:

_____        _6-28-16_
(signature)                          (date)

- 2 -

# TABLE OF CONTENTS

CORPORATE DISCLOSURE FORM..............................................................i

TABLE OF AUTHORITIES .....................................................................iii

STATEMENT OF THE ISSUES................................................................. 1

STATEMENT OF THE CASE..................................................................... 2

STATEMENT OF FACTS ......................................................................... 3

SUMMARY OF ARGUMENT ................................................................... 9

ARGUMENT ........................................................................................ 11

      A.    Standard of Review .............................................................. 11

      B.    Davis failed to state a claim for false imprisonment against Walmart and Greer where they did not physically restrain Davis or direct another to physically restrain her and their post-arrest involvement was limited to providing an area for law enforcement to question Davis................................................ 14

      C.    Davis failed to state a claim for intentional infliction of emotional distress (IIED) against Walmart and Greer because reporting the suspicious circumstances surrounding Davis' prescription to law enforcement and cooperating with law enforcement after making the report does not amount to outrageous conduct .................. 20

      D.    Davis failed to state a claim for assumption of duty against Walmart and Greer because Virginia does not recognize such a claim as an independent cause of action and the First Amended Complaint failed to allege any specific duty undertaken by Walmart and Greer ......................................................................... 24

E.      Davis failed to state a § 1983 civil conspiracy claim against Greer and Walmart because the facts alleged fail to plausibly demonstrate any agreement between Greer, Walmart and Harney to unlawfully arrest Davis .................................................................... 30

F.      Davis failed to state a medical malpractice claim against Greer and Walmart because their disclosure of Davis' prescription information to law enforcement does not constitute "medical malpractice" and was expressly permitted by statute .................................................. 36

G.      Davis failed to state a negligence per se claim against Greer and Walmart because Davis' alleged injuries were not a reasonably foreseeable result of Greer's disclosure of Davis' PMP information, which was expressly permitted by statute .................................................. 44

H.      Davis' state law claims were properly dismissed and Davis failed to state a claim under said theories because Greer is entitled to immunity pursuant to Va. Code §54.1-3408.2; therefore, Davis' state law claims against Greer and Walmart are barred ..................................... 50

CONCLUSION ............................................................... 58

STATEMENT REGARDING ORAL ARGUMENT ................................. 58

CERTIFICATE OF COMPLIANCE........................................... 60

CERTIFICATE OF SERVICE .................................................. 61

# TABLE OF AUTHORITIES

## CASES

<u>Page</u>

*A Soc'y Without A Name v. Virginia*,
    655 F.3d 342 (4th Cir. 2011) ...........................................................30

*Adickes v. S.H. Kress & Co.*,
    398 U.S. 144 (1970)........................................................................32

*Agra, Gill & Duffus, Inc. v. Benson*,
    920 F.2d 1173 (4th Cir. 1990) .......................................................16

*Alcoy v. Valley Nursing Homes, Inc.*,
    272 Va. 37, 630 S.E.2d 301 (2006) ................................................43

*Almy v. Grisham*,
    273 Va. 68, 639 S.E.2d 182 (2007) ..........................................22, 23

*American Mfrs. Mut. Ins. Co. v. Sullivan*,
    526 U.S. 40 (1999)..........................................................................31

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)........................................................................11

*Associated Gen. Contractors v. Cal. State Council of Carpenters*,
    459 U.S. 519 (1983)........................................................................11

*Baez v. JetBlue Airways*,
    745 F. Supp. 2d 214 (E.D.N.Y. 2010) ......................................33, 34

*Banks v. Richmond*,
    232 Va. 130, 348 S.E.2d 280 (1986) ........................................46, 47

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007)...................................................................13, 30

*Benavidez v. Gunnell*,
    722 F.2d 615 (10th Cir. 1983) .......................................................32

*Bender v. Suburban Hosp., Inc.*,
    159 F.3d 186 (4th Cir. 1998) .........................................................................12

*Bosworth v. Vornado Realty L.P.*,
    83 Va. Cir. 549, 2010 WL. 8925838 ...........................................................29

*Brooks v. City of Winston-Salem, North Carolina*,
    85 F.3d 178 (4th Cir.1996) ...........................................................................52

*Burns v. Gagnon*,
    283 Va. 657, 727 S.E.2d 634 (2012) .......................................................25, 26

*Burton  v. Wilmington Parking Authority*,
    365 U.S. 715 (1961)...................................................................................31, 32

*Butler v. Goldblatt Bros., Inc.*,
    589 F.2d 323 (7th Cir. 1978) .......................................................................32

*Canady v. Crestar Mortg. Corp.*,
    109 F.3d 969 (4th Cir. 1997) ........................................................................27

*Chiles v. Crooks*,
    708 F. Supp. 127 (D.S.C. 1989) ..................................................................33

*Conley v. Gibson*,
    355 U.S. 41 (2007)........................................................................................13

*Constantine v. Rectors & Visitors of George Mason Univ.*,
    411 F.3d 474 (4th Cir. 2005) (12(b)(6) ........................................................37

*Davies v. Virginia CVS Pharmacy, LLC*,
    No. 7:14-cv-00175, 2014 WL 6460787 (W.D. Va. Nov. 17, 2014) ..............28

*Didato v. Strehler*,
    262 Va. 617, 554 S.E.2d 42 (2001) .........................................................24, 25

*Echols v. Sheriff of Bertie Cty.*,
    No. 2:14-CV-33-FL, 2015 WL 5737394 (E.D.N.C. Aug. 14, 2015),
    *aff'd sub nom. Echols v. Sheriff of Bertie Cty.*, 638 F. App'x 242 (4th
    Cir. 2016) ................................................................................................52, 53

*Espinoza v. Walgreen Co.*,
    No. 2:08CV00997DS, 2009 WL 2843345 (D. Utah Aug. 25, 2009)........33, 34

*Fairfax Hosp. by & Through INOVA Health Sys. Hosps. v. Curtis*,
    254 Va. 437, 492 S.E.2d 642 (1997) ...................................................39, 40, 41

*Ford Motor Co. v. Boomer*,
    285 Va. 141, 736 S.E.2d 724 (2013) .............................................................45

*Francis v. Giacomelli*,
    588 F.3d 186 (4th Cir.2009) ....................................................................12, 13

*Gedrich v. Fairfax Cty. Dep't of Family Servs.*,
    282 F. Supp. 2d 439 (E.D. Va. 2003) ............................................................43

*Ginsberg v. Healey Car & Truck Leasing, Inc.*,
    189 F.3d 268 (2d Cir. 1999) ..........................................................................32

*Goddard v. Protective Life Corp.*,
    82 F. Supp. 2d 545 (E.D. Va. 2000) ..............................................................24

*Goines v. Valley Cmty. Servs. Bd.*,
    822 F.3d 159 (4th Cir. 2016) .........................................................................12

*Goode v. Cent. Virginia Legal Aid Soc'y, Inc.*,
    807 F.3d 619 (4th Cir. 2015) .............................................................23, 28, 44

*Gooden v. Howard County, Md.*,
    954 F.2d 960 (4th Cir. 1992) .........................................................................31

*Goulmamine v. CVS Pharm., Inc.*,
    138 F. Supp. 3d 652, 663 (E.D. Va. 2015) ..............................................36, 37,

*Havee v. Belk*,
    775 F.2d 1209 (4th Cir. 1985) .......................................................................37

*Henning v. Thomas*,
    235 Va. 181, 366 S.E.2d 109 (1988) .............................................................38

*Jeannie's Jewelers, Inc. v. ADT Sec. Servs., Inc.*,
No. 1:12cv265, 2012 WL 1869319 (E.D. Va. May 22, 2012) ........................29

*Jenkins v. Medford*,
119 F.3d 1156 (4th Cir. 1997) .........................................................31

*Johnson v. MV Transp. Inc.*,
716 F. Supp. 2d 410 (D. Md. 2010)..........................................................11, 12

*Jordan v. Shands*,
255 Va. 492, 500 S.E.2d 215 (1998) ...............................................14

*Kalantar v. Lufthansa German Airlines*,
402 F. Supp. 2d 130 (D.D.C. 2005).....................................................14

*Kaltman v. All Am. Pest Control, Inc.*,
281 Va. 483, 706 S.E.2d 864 (2011) ................................................45

*Kellerman v. McDonough*,
278 Va. 478, 684 S.E.2d 786 (2009) ....................................25, 28, 29

*Kimberlin v. Pm Transp.*,
264 Va. 261, 563 S.E.2d 665 (2002) ................................................50

*Lawton v. Walker*,
231 Va. 247, 343 S.E.2d 335 (1986) ................................................55

*Lee v. Patel*,
564 F. Supp. 755 (E.D. Va. 1983) ....................................................33

*Mark v. Furay*,
769 F.2d 1266 (7th Cir. 1985) .........................................................33

*Marsh v. Alabama*,
326 U.S. 501 (1946).........................................................................31

*Miller v. Commonwealth*,
25 Va. App. 727, 492 S.E.2d 482 (1997) ........................................55

*Montanile v. Botticelli,*
    2008 WL 5101775 (E.D. Va. Nov. 25, 2008) ..................................................15

*Montgomery Ward & Co. v. Wickline,*
    188 Va. 485, 50 S.E.2d 387 (1948) .................................................................15

*Moore v. Potomac Sav. Bank,*
    160 Va. 597,,169 S.E. 922 (1933) ...................................................................55

*Morgan v. Wal-Mart Stores East, LP,*
    2010 U.S. Dist. LEXIS 116400 (E.D. Va. Nov.  1, 2010) .............................26

*Mullins v. Sanders,*
    189 Va. 624, 54 S.E.2d 116 (1949) .........................................................17, 18

*Muse v. Schleiden,*
    349 F. Supp. 2d 990 (E.D. Va. 2004) .............................................................26

*Nolde Brothers, Inc. v. Wray,*
    221 Va. 25, 266 S.E.2d 882 (1980) .................................................................24

*Pallas v. Zaharopoulos,*
    219 Va. 751, 250 S.E.2d 357 (1979) ...............................................................55

*Petter v. Acevedo,*
    31 Va. Cir. 7 (Alexandria 1993) ......................................................................43

*Reed v. Commonwealth,*
    6 Va. App. 65, 366, S.E.2d 274 (1988) ...........................................................55

*Rendell-Baker v. Kohn,*
    457 U.S. 830 (1982)........................................................................................31

*Robinson v. Equifax Information Services, LLC,*
    560 F.3d 235 (4th Cir. 2009) ..........................................................................17

*Russo v. White,*
    241 Va. 23, 400 S.E.2d 160 (1991) .................................................................21

*Sands & Co. v. Norvell*,
   126 Va. 384, 101 S.E. 569 (1919) ........................................................... 18, 19

*Simmons v. Poe*,
   47 F.3d 1370 (4th Cir. 1995) ........................................................... 34

*Sims v. Jefferson Downs Racing Assoc.*,
   778 F.2d 1068 (5th Cir. 1985) ........................................................... 32

*Smith v. Kryzanowski*,
   69 Va. Cir. 185 (Richmond 2005) ........................................................... 41

*Thomas v. Settle*,
   247 Va. 15, 439 S.E.2d 360 (1994) ........................................................... 45

*U.S. ex rel. Atkinson v. PA. Shipbuilding Co.*,
   473 F.3d 506 (3d Cir. 2007) ........................................................... 23, 28, 44

*United States v. Ilayayev*,
   800 F. Supp. 2d 417 (E.D.N.Y. 2011) ........................................................... 57

*United States v. Hirschfeld*,
   964 F.2d 318 (4th Cir. 1992) ........................................................... 55

*Va. Elec. & Power Co. v. Savoy Constr. Co.*,
   224 Va. 36, 294 S.E.2d 811 (1982) ........................................................... 46

*W.T. Grant Co. v. Owens*,
   149 Va. 906, 144 S.E. 860 (1928) ........................................................... 19

*W. Va. CWP Fund v. Stacy*,
   671 F.3d 378 (4th Cir. 2011) ........................................................... 27

*Webb v. Smith*,
   276 Va. 305, 661 S.E.2d 457 (2008) ........................................................... 38

*Weidman v. Exxon Mobil Corp.*,
   776 F.3d 214 (4th Cir. 2015) ........................................................... 11

*Womack v. Eldridge*,
215 Va. 338, 210 S.E.2d 145 (1974) ............................................................20

## STATUTES, CODES AND REGULATIONS

21 U.S.C. § 821 ...........................................................................................54
21 U.S.C. § 871 ...........................................................................................54
42 U.S.C. § 1983 ....................................................................2, 10, 30, 31, 34

Va. Code Ann. § 8.01-581.1 .......................................................................42
Va. Code Ann. § 8.01-581.20 .....................................................................38
Va. Code Ann. § 8.01-581.20(B) ................................................................37
Va. Code Ann. § 18.2-258.1 .......................................................................49
Va. Code Ann. § 18.2-460 ..........................................................................22
Va. Code Ann. § 18.2-463 ..........................................................................22
Va. Code Ann. § 19.2-82 ............................................................................17
Va. Code Ann. § 32.1-127.1:03(31) ...........................................................39
Va. Code Ann. § 32.1-127.1:03(C)(31) .................................................48, 49
Va. Code Ann. § 32.1-127.1:03(D) .........................................................40, 41
Va. Code Ann. § 32.1-127.1:03(D)(17) .......................................................41
Va. Code Ann. § 54.1-2519 *et seq* ............................................................51
Va. Code Ann. § 54.1-2525(A)-(B) ..................................................44, 47, 48
Va. Code Ann. § 54.1-3320 .....................................................................38, 39
Va. Code Ann. § 54.1-3320(1) .....................................................................39
Va. Code Ann. § 54.1-3320(6) .....................................................................39
Va. Code Ann. § 54.1-3408 ..........................................................................50
Va. Code Ann. § 54.1-3408.2 ........................................................40, 42, 50, 52

18 Va. Admin. Code § 110-20-25 .............................................................38, 39
18 Va. Admin. Code § 110-20-25(2) .............................................................49
18 Va. Admin. Code § 110-20-270 ................................................................51

21 C.F.R. § 1306.04(a) .................................................................................51
21 C.F.R. §1306.12(b)(1)(ii) .........................................................................54

## RULES

Fed. R. Civ. P. 12(b)(6) ................................................................................11

## OTHER AUTHORITY

*Restatement of Torts* § 42 .........................................................................16

## STATEMENT OF THE ISSUES

1.    Did the District Court properly determine that Davis failed to state a claim for false imprisonment where neither Greer nor any other Walmart employee physically restrained Davis or directed law enforcement to restrain or arrest Davis, and Greer's and Walmart's involvement was limited to complying with Deputy Harney's request for space to question Davis?

2.    Did the District Court properly determine that Davis failed to state a claim for intentional infliction of emotional distress ("IIED") where Greer reasonably suspected that Davis was attempting to fill a duplicate prescription because Davis had filled an identical prescription four days earlier at a different pharmacy, had displayed a pattern of filling identical prescriptions within a few days of each other at different pharmacies during the prior six months, and Greer merely followed Deputy Harney's instructions after Greer reported the circumstances to Deputy Harney?

3.    Did the District Court properly determine that Davis failed to state a claim for assumption of duty where such a claim has never been recognized as an independent cause of action under Virginia law and Greer and Walmart simply reported suspicious circumstances surrounding Davis' prescription to law enforcement and thereafter responded to an officer's requests for assistance?

4.    Did the District Court properly determine that Davis failed to state a claim for 42 U.S.C. § 1983 civil conspiracy where the extent of Greer's and Walmart's interaction with law enforcement prior to Davis' arrest consisted of two brief phone conversations during which Greer reported "red flags" she observed concerning Davis' prescription, Walmart and Greer merely complied with Deputy Harney's instructions, and Deputy Harney alone made the decision to arrest Davis?

5.     Did the District Court properly determine that Davis failed to state a claim for medical malpractice where the only duty that Greer owed to Plaintiff was to correctly fill her prescription, and Greer's and Walmart's disclosure of Davis' prescription information to law enforcement was expressly permitted by statute?

6.    Did the District Court properly determine that Davis failed to state a claim for negligence per se where the harm alleged by Davis was not reasonably foreseeable and was caused by Deputy Harney, and was not the type of harm that Davis' cited authorities were intended to prevent?

## STATEMENT OF THE CASE

Davis filed her complaint on June 29, 2015. (JA 1.) On December 3, 2015, after the initial discovery was essentially completed and just prior to the discovery cutoff of December 8, 2015, Davis filed a motion for leave to amend and for an enlargement of time, which the Court granted. (JA 8-10.) The First Amended Complaint, filed on December 14, 2015, was 34 pages long, contained

220 paragraphs, and relied extensively upon 148 pages of attached exhibits, most of which were portions of sworn deposition testimony. (JA 19-200.) A little more than a month later, Davis filed a motion for leave to file a second amended complaint, which the Court denied by order entered on February 2, 2016. (JA 11-12.)

Greer and Walmart moved to dismiss the First Amended Complaint (JA 10), and by memorandum opinion on April 13, 2016, the Court granted the motions and dismissed all claims, without prejudice. (JA 14, 319). On May 6, 2016, Davis filed a second motion for leave to file a second amended complaint, seeking to amend her false imprisonment, negligence, and § 1983 claims against Walmart and Greer. (JA 16, 395-97.) Davis' proposed second amended complaint did not seek to amend her "assumption of duty," intentional infliction of emotional distress, or negligence per se claims. (JA 395-97.) On May 31, 2016, the District Court denied Davis' motion for leave to amend, and Davis appealed on June 13, 2016. (JA 17-18.)

## STATEMENT OF THE FACTS

On Saturday, October 5, 2013, Eve Davis ("Davis") dropped off a prescription written by Dr. Syed Ahmed for 45 tablets of Adderall, dated October 1, 2013, at the Southpoint Walmart in Fredericksburg. (JA 21, 176-77.) Brenda Greer ("Greer") was the pharmacist on duty. (JA 21.) Greer reviewed the Adderall

prescription and it appeared facially valid. Greer checked Davis' Adderall prescription using the Prescription Monitoring Program ("PMP"), which allows prescribers and pharmacists to identify an individual's treating physicians and the locations at which the individual fills prescriptions in order to detect prescription irregularities. (JA 22.)

Upon reviewing the PMP, Greer learned that Davis had filled an identical Adderall prescription only four days earlier at another pharmacy. (JA 28, 177-78.) Dr. Ahmed had not written on the prescription that Davis presented at Walmart that it was not to be filled before a certain date. (JA 69, 181.) The PMP also revealed that Davis had filled multiple identical Adderall prescriptions within a few days of each other at five different pharmacies over the previous seven months. (JA 22, 75-76, 147-48.) Davis indicated that she planned to pay cash for the Adderall. (JA 21, 179.) Based upon this information, Greer suspected that Davis was attempting to fill her Adderall prescription too soon. (JA 23, 64.)

Greer called Dr. Ahmed to determine whether he approved of Davis filling the Adderall prescription on that date, but she was unable to speak with him, so she left him a voicemail and sent him a fax. (JA 23, 69, 77, 137.) The fact that Davis presented her prescription to Greer at a time when Greer was unable to contact the prescriber was yet another "red flag" for Greer. (Greer Dep. 159:10-19; 160: 10-15, Nov. 3, 2015.) In the meantime, a pharmacy technician called Davis'

4

phone and left a message that the Southpoint Walmart pharmacy would not be able to fill the prescription until the following Monday. (JA 23, 86.)

Following her attempt to contact Dr. Ahmed, Greer called the nonemergency number for the Spotsylvania County Sheriff's Department and spoke with a dispatcher. (JA 23.) Greer told the dispatcher that Davis had dropped off a prescription with the same date for the same medicine as another prescription she had just filled at different pharmacy. (JA 23, 147.) Greer informed the dispatcher of her suspicion that the Adderall prescription was "fake," which the dispatcher immediately clarified as meaning that Davis appeared to be trying to fill a duplicate prescription. (JA 23-24, 147.) Greer also informed the dispatcher that the PMP revealed that Davis had been filling identical prescriptions since April. (JA 24, 147.) Greer said she could call Davis and ask her to return to the pharmacy, but said she would "wait and see what the deputy wanted to do." (JA 24, 148.) Greer did not request a deputy to come to the Southpoint Walmart and never asked that Davis be arrested or taken into custody. (JA 147-150.) The dispatcher told Greer that a deputy was on his way, but never communicated to Greer that the deputy planned to arrest Davis or take Davis into custody. (JA 25, 150.)

Sometime after Greer ended her call with the dispatcher, Deputy James Harney ("Harney") called Greer. Greer informed Harney that Davis' PMP history raised some "red flags." (JA 27.) Greer did not tell Harney that the

prescription was fraudulent and did not describe in detail the red flags she had observed in Davis' prescription history. (JA 27-28.) Greer told Harney that the pharmacy needed more time to verify the status of the prescription with Dr. Ahmed. (JA 27.) Harney told Greer that there was "something" Harney wanted to talk to Davis about, but did not go into more detail.  (JA 28, 81.) Harney seemed "very anxious" to get to the pharmacy and "pretty eager" to speak with Davis. (JA 28.) Via radio, Harney stated that Davis was "one of the ones I've been looking for." (JA 26-27, 154.)

Harney asked Walmart if they could find Davis in the store using their security cameras. (JA 27.) Harney asked Greer to call Davis to come back to the pharmacy, which Greer did not do. (JA 28, 78.) Harney also asked Greer to alert Harney when Davis returned to the pharmacy counter and stall and identify Davis at the pharmacy counter. (JA 28, 30.)

Harney informed Greer that he would park near the Tire and Lube Express side of the building. (JA 28.) Harney requested that Greer have someone meet him there. A pharmacy technician, Danielle Ynoa ("Ynoa"), went to the automotive center and met Harney. (JA 29.) Harney told Ynoa that he had a "stack" of paperwork on Davis, although this was untrue. (JA 30.) Shortly thereafter, when Davis came to the pharmacy counter to pick up her prescription, Greer asked Davis to wait a few minutes because Greer did not know if it was

ready yet. (JA 31.) Greer called Ynoa to let Harney know that Davis was at the pharmacy, and Ynoa conveyed the information to Harney. (JA 31.)

Harney came into the pharmacy area and stood behind Davis in line. (JA 32.) Davis confirmed her name and date of birth at the pharmacy counter, and Greer nodded to Harney as a means of identifying Davis. (JA 32.) Harney then placed Davis in handcuffs and escorted her to a loss prevention office, in disregard of at least one controlling General Order of the Sheriff's Department. (JA 32-33.) Harney did not physically meet with or interview Greer prior to arresting Davis, and did not conduct any independent investigation whatsoever. (JA 33.) Harney was permitted to use Walmart's loss prevention room to question Davis (JA 32.) During Harney's questioning of Davis, Harney told Davis that he had knowledge of her involvement in other criminal matters, even though this was untrue. (JA 33-34.)

Prior to Harney placing handcuffs on Davis, Harney did not relate to Greer his intention to arrest Davis and did not discuss the matter with Greer in any level of detail. (JA 33, 89, 120.) The First Amended Complaint does not allege, nor do the allegations support an inference, that Greer had any relationship or interaction with either Davis or Harney prior to October 5, 2013. (JA 19-52.) Additionally, Davis admitted during her deposition that at no time before her arrest had she ever had an adversarial interaction with Greer or any other Walmart

7

employee, and that she did not think Greer held any malice towards her. (Davis Dep. 161:12-162-19, Nov. 3, 2015.)

Deputy Harney transported Davis to Rappahannock Regional Jail where she was booked for attempting to obtain Adderall by fraud. (JA 34.) Davis was denied bond and was held at Rappahannock Regional for 16 days. (JA 36.) Davis suffered from medication withdrawal and "severe emotional anguish" while in jail. (JA 36.)

Dr. Ahmed returned Greer's phone call on October 7, 2013, and stated that Davis' prescription was "valid." (JA 35.) Greer did not relay this information to the Sheriff's Department. (JA 35.) Harney had previously told Greer that Plaintiff had admitted to him that she was selling her pills, and Greer did not believe that the suspicious activity she reported to Harney was the basis for Harney's arrest. (Greer Dep. 84:18-23, Nov. 3, 2015; JA 73).

The Assistant Commonwealth Attorney assigned to Davis' case *nolle prossed* the charges after the Spotsylvania Circuit Court issued an order suppressing the evidence obtained by Harney. (JA 37.) Although Judge Ellis described Davis' behavior as "concerning," he concluded that Harney did not have probable cause to arrest Davis. (JA 37.)

## SUMMARY OF ARGUMENT

The District Court properly dismissed Davis' claims against Walmart and Greer for failure to state a claim. The allegations of the First Amended Complaint reflect that Greer was confronted with suspicious circumstances surrounding Davis' Adderall prescription. After Greer could not reach the prescribing physician, she contacted law enforcement and reported the red flags that she had observed. Greer and Walmart followed the directions of Deputy Harney during his investigation, primarily providing a location for Deputy Harney to question Davis. Because these allegations and any reasonable inferences that can be drawn from them do not support the claims asserted by Davis, the District Court properly dismissed the claims against Greer and Walmart for failure to state a claim.

Davis failed to state a claim for false imprisonment because Greer and Walmart did not restrain Davis, nor did they direct or request her restraint by another. Furthermore, providing a location for Deputy Harney to question Davis did not *cause* Deputy Harney to unreasonably delay bringing Davis before a magistrate.

Davis failed to state a claim for IIED because Greer and Walmart reporting the "red flags" concerning Davis' prescription to law enforcement and

9

complying with Deputy Harney's directions as he conducted his investigation of the report was not "outrageous and intolerable" behavior.

Davis failed to state a claim for assumption of duty because Virginia does not recognize such a cause of action. Furthermore, the facts alleged, that Greer and Walmart reported suspicious circumstances surrounding Davis' prescription to law enforcement and followed an officer's subsequent directions, do not support the conclusion that Walmart and Greer assumed any particular duty to Davis.

Davis failed to state a claim for § 1983 civil conspiracy because she did not allege facts which plausibly demonstrate that Greer, Walmart, and Deputy Harney formed an agreement to deprive Davis' of her constitutional rights. To the contrary, the only reasonable inference to be drawn from Davis' allegations is that Greer and Walmart were unaware of what action, if any, Deputy Harney planned to take regarding the information reported Davis' to the Sheriff's Department.

Davis failed to state a claim for medical malpractice because a pharmacist's only duty under Virginia law is to fill a patient's prescription properly. Thus, reporting suspicious prescription activity to law enforcement does not fall within the purview of medical malpractice. Furthermore, such disclosure was expressly permitted under Virginia law.

Davis failed to state a claim for negligence per se because Davis' alleged injury was not a reasonably foreseeable result of the disclosure of Davis' PMP information to law enforcement and was not the type of harm the statute and regulation were designed to prevent. As previously stated, the disclosure was expressly permitted by statute.

Because Davis failed to state a claim under any of the asserted theories, this Court should affirm the District Court's decision to dismiss Davis' claims against Walmart and Greer.

## ARGUMENT

### A.    *Standard of Review*

On appeal, a district court's decision to grant a motion to dismiss for failure to state a claim is reviewed de novo. *Weidman v. Exxon Mobil Corp.*, 776 F.3d 214, 219 (4th Cir. 2015). "Under Rule 12(b)(6), a court generally accepts all factual allegations as true." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). However, when reviewing alleged facts in the light most favorable to the plaintiff, "[i]t is not…proper to assume that the [plaintiff] can prove facts that it has not alleged…." *Associated Gen. Contractors v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983). "The court need not…accept unsupported legal allegations…legal conclusions couched as factual allegations…or conclusory factual allegations devoid of any reference to actual events." *Johnson v. MV Transp. Inc.*, 716 F.

Supp. 2d 410, 413 (D. Md. 2010) (internal citation omitted); s*ee also Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir.2009) ("[D]etermining whether a complaint…can survive a Rule 12(b)(6) motion will be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not show[n] — that the pleader is entitled to relief….") (internal quotations and citations omitted).

While a complaint does not have to expound upon every fact, a plaintiff who pleads particular facts "is bound by such exposition." *Bender v. Suburban Hosp., Inc.*, 159 F.3d 186, 192 (4th Cir. 1998). On a motion to dismiss, courts properly consider documents "explicitly incorporated into the complaint by reference…and those attached to the complaint as exhibits…." *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016) (citations omitted).[1] "[W]hen

---

[1] Davis cites *Goines* in her brief and apparently seeks to imply that the District Court improperly considered exhibits attached to her First Amended Complaint. *See* Br. of Appellant at 19. However, she points to no specific factual statements in the exhibits that she claims were improperly relied upon by the District Court in reaching its decision. Moreover, the Fourth Circuit instructed that courts should "consider the nature of the document and why the plaintiff attached it" before treating the contents of an attached document as true. *Goines*, 822 F.3d at 167. Here, Davis' First Amended Complaint did not refer to the exhibits for "purposes other than the truthfulness of the document"; rather, she adopted the contents of the exhibits as true as a means to bolster the assertions of her First Amended Complaint. (JA 20-38.) Indeed, Davis continues to cite to exhibits attached to her

the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007) (internal quotation marks and citations omitted).

Significantly, the legal standard cited by Davis, namely that a motion to dismiss should only be granted if it appears certain that the plaintiff cannot prove any set of facts in support of her claim demonstrating a right to relief (Br. of Appellant at 19), was specifically overruled by the Supreme Court. *Twombly*, 550 U.S. at 563 (noting that the "no set of facts" language from *Conley v. Gibson*, 355 U.S. 41 (2007) has "earned its retirement" and is "best forgotten as an incomplete, negative gloss on an accepted pleading standard"); *see also Francis*, 588 F.3d at 192 n.1 (4th Cir. 2009) (noting that the *Conley v. Gibson,* 355 U.S. 41, 45–46 (1957), standard was explicitly overruled in *Twombly,* 550 U.S. at 562–63).

---

First Amended Complaint and rely upon the truthfulness of the contents of those exhibits in support of her claims. *See* Br. of Appellant *passim*. Under such circumstances, Davis should not be heard to complain, particularly in a vague and indefinite way, that the District Court improperly relied upon exhibits (primarily sworn testimony) attached to and explicitly adopted by Davis in her First Amended Complaint.

B.  *Davis failed to state a claim for false imprisonment against Walmart and Greer where they did not physically restrain Davis or direct another to physically restrain her and their post-arrest involvement was limited to providing an area for law enforcement to question Davis.*

Davis' false imprisonment claim against Walmart and Greer has gone through yet another metamorphosis on this appeal. In her First Amended Complaint, Davis alleged that Walmart and Greer "instigated, directed, requested and participated in Deputy Harney's unlawful arrest of Ms. Davis." (JA 38.) Davis now argues that Walmart and Greer merely "rendered aid and assistance" to Deputy Harney, thereby failing to guarantee that Deputy Harney delivered Davis "to a magistrate without unnecessary delay." (Br. of Appellant at 20.) This Court should reject Davis' attempt to redefine false imprisonment under Virginia law by describing it as a delay in bringing an arrested individual before a magistrate because such a claim is simply not supported by any of the case law cited.

1.  Greer and Walmart did not physically restrain or direct another to physically restrain Davis.

False imprisonment is "the direct restraint by one person of the physical liberty of another without adequate legal justification." *Jordan v. Shands*, 255 Va. 492, 497, 500 S.E.2d 215 (1998). Courts in Virginia have permitted plaintiffs to "maintain a false imprisonment claim against private-party defendants who did not themselves physically apprehend the plaintiff but rather requested that others do so." *Kalantar v. Lufthansa German Airlines*, 402 F. Supp. 2d 130, 142

(D.D.C. 2005); *see also Montanile v. Botticelli*, 2008 WL 5101775 (E.D. Va. Nov. 25, 2008). However, the sole basis for allowing false imprisonment claims to proceed against non-police defendants who do not participate in the physical restraint of a plaintiff is the defendant's clear instruction to law enforcement to effectuate the arrest. *See Montgomery Ward & Co. v. Wickline*, 188 Va. 485, 50 S.E.2d 387 (1948). For example, in *Wickline*, the court held that the plaintiffs had made out a case for false imprisonment against the defendant department store where it was "uncontradicted that [suspected thieves] were searched by the officer in the presence of [the store employees] *and at their direction*…" 188 Va. at 488, 50 S.E.2d at 388 (emphasis added).

The First Amended Complaint makes the conclusory allegation that Greer "instigated, directed, requested, and participated in Deputy Harney's unlawful arrest of Ms. Davis." (JA 38.) However, Davis failed to plead any facts supporting this claim. Rather, the facts pleaded in the First Amended Complaint merely suggest that Greer attempted to relate suspicious activity to law enforcement and to identify Davis for law enforcement. Absent from Virginia case law is even one example of a civilian being held liable for false imprisonment for a law enforcement officer's arrest without specifically directing law enforcement to effectuate the arrest.

Confinement is generally accepted as a necessary prerequisite to a *prima facie* case of false imprisonment. *Restatement of Torts* § 42. Davis' claim that Greer schemed to keep Davis in the store until law enforcement arrived is not relevant to a claim of false imprisonment against Greer. Davis was not imprisoned during the time she was wandering the store because she was not confined or restrained and was free to come and go as she pleased. Because false imprisonment requires *physical* restraint and there are no facts alleged implicating Walmart or Greer in Davis' confinement, Davis' false imprisonment claim was correctly dismissed.

    2.    <u>Walmart's and Greer's cooperation with Deputy Harney after he arrested Davis did not cause undue delay in Harney bringing Davis before a magistrate and does not support a claim for false imprisonment against Walmart and Greer.</u>

In her brief, Davis pivots and changes the theory of her false imprisonment claim. She now focuses on the "aid and assistance" that Walmart and Greer allegedly rendered to Deputy Harney during Harney's post-arrest interrogation of Davis and his alleged failure to deliver Davis to a magistrate without unnecessary delay. (Br. of Appellant at 20.) As a threshold matter, this Court should decline to consider Davis' argument because Davis failed to present it to the Court below. *Agra, Gill & Duffus, Inc. v. Benson*, 920 F.2d 1173, 1176 (4th Cir. 1990) ("We will not accept on appeal theories that were not raised in the

district court except under unusual circumstances."); *Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 242 (4th Cir. 2009) ("Absent exceptional circumstances, of course, we do not consider issues raised for the first time on appeal.") (internal quotation marks and citations omitted). However, even if the Court considers Davis' new theory, the authorities on which Davis relies are inapposite, their holdings are incorrectly set forth in the brief, and they do not support the propositions for which they are cited. Moreover, each of these cases are readily distinguishable both factually and legally, and they do not support Davis' false imprisonment claim.

Virginia Code § 19.2-82 requires that persons arrested without a warrant be brought promptly before a magistrate. However, this statute applies only to police officers, not to Walmart and Greer. It therefore cannot serve as the basis for a false imprisonment claim under the circumstances of this case.

Davis' citation to and reliance upon *Mullins v. Sanders*, 189 Va. 624, 54 S.E.2d 116 (1949) is similarly misplaced. Davis misstates the principle that a private party who causes, induces, aids, assists, or encourages an unlawful detention is guilty of false imprisonment. Rather, what the Virginia Supreme Court actually decided in *Mullins* is that "any person who causes, induces, aids, assists or encourages an officer to *delay unreasonably* in bringing the arresting person before the committing or judicial officer is likewise liable for such unlawful

17

imprisonment." 189 Va. at 631, 54 S.E.2d at 120 (emphasis added).  In *Mullins*, the private party swore out a warrant, went with a deputy to the arrestee's house, and insisted that the arrestee pay the private party the money he was owed or the arrestee would go to jail. *Id*. at 627-28, 54 S.E.2d at 118.

There are no facts alleged anywhere in the First Amended Complaint that Walmart or Greer played any role in the decision to arrest Davis, to detain her for questioning, or to *delay* her being brought before a judicial officer. In fact, the allegations against Deputy Harney that Davis makes in her First Amended Complaint consistently minimize Greer's and Walmart's role in Deputy Harney's decision to arrest and question Davis. (JA 33.) Hence, Davis' characterization of the holding in *Mullins* is inaccurate, and the facts she alleges do not implicate that case.

Likewise, Davis' reliance on *Sands & Co. v. Norvell*, 126 Va. 384, 101 S.E. 569 (1919), is unavailing.  In *Norvell*, a district store manager for Sands & Co. swore out a warrant for the plaintiff, charging the plaintiff with grand larceny. A store manager was present during the arrest and throughout the detention, and he was "an active participant in all that was done in connection with the prosecution," including joining the officers in actively attempting to extract a confession from the plaintiff. *Id.* The Supreme Court found under those facts that

while the arrest may have been lawful, the detention was unlawful because of the conditions to which the plaintiff was subjected during the interrogation. *Id.*

Davis alleges no facts in the First Amended Complaint, or anywhere in the attachments, supporting the proposition that Walmart and Greer played any role whatsoever in the detention and interrogation of Davis. There are no facts suggesting that Deputy Harney was a Walmart agent. Any alleged failure to promptly take Davis before a magistrate judge was the responsibility of Deputy Harney alone. Notwithstanding Davis' misstatement of the relevant principles, the District Court correctly held that simply providing a room at the request of a police officer to question a suspect cannot and should not amount to false imprisonment under Virginia law. The relevant inquiry is what role, if any, did Walmart and Greer play in Davis' alleged false imprisonment. The Court correctly found that following the directions of a police officer by responding to his requests does not amount to false imprisonment under Virginia law, and such a finding would pervert public policy.

Similarly, Davis' reliance upon *W.T. Grant Co. v. Owens*, 149 Va. 906, 144 S.E. 860 (1928), demonstrates that there are simply no facts present in this case which support Davis' false imprisonment claim. A casual review of *Owens* shows that the store manager played an active role in the detention and interrogation of the defendant's employee. *Owens* was not a case where a retailer

19

simply contacted law enforcement for the purpose of reporting potential criminal activity.

Davis' misstatement of Virginia law and her reliance on *Mullins* should be rejected. The controlling standard set forth in the appellant's brief is simply not a correct version of Virginia law. The District Court correctly held that Greer and Walmart were not responsible for Davis' alleged imprisonment. Therefore, the District Court's decision was correct and should be affirmed.

>    *C.    Davis failed to state a claim for intentional infliction of emotional distress (IIED) against Walmart and Greer because reporting the suspicious circumstances surrounding Davis' prescription to law enforcement and cooperating with law enforcement after making the report does not amount to outrageous conduct.*

Davis' First Amended Complaint completely fails to meet the elements of a claim for IIED. Those elements are: 1) the wrongdoer's conduct was intentional or reckless; 2) the conduct was outrageous or intolerable; 3) there was a causal connection between the wrongdoer's conduct and the resulting emotional distress; and 4) the resulting emotional distress was severe. *Womack v. Eldridge*, 215 Va. 338, 342, 210 S.E.2d 145, 148 (1974). There are no facts alleged that would suggest that Walmart's and Greer's conduct was intentional and reckless or that Davis' emotional distress was severe. Additionally, Davis' allegation that Walmart and Greer's conduct was outrageous or intolerable is completely unsupported by the facts of this case.

The Supreme Court of Virginia has provided the following guidance when evaluating whether conduct is outrageous or intolerable:

> Under the second prong, it is insufficient for a defendant to have "acted with an intent which is tortious or even criminal."…Even if a defendant "has intended to inflict emotional distress," or his conduct can be "characterized by 'malice,' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort," the requirement of the second prong has not been satisfied…"Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."

*Russo v. White,* 241 Va. 23, 27, 400 S.E.2d 160, 162 (1991) (citations omitted).

The First Amended Complaint fails to allege facts sufficient to support a finding that Walmart or Greer acted with this level of intent. No facts are alleged that could support a finding that Walmart's or Greer's conduct was "utterly intolerable in a civilized community." As the Virginia Supreme Court noted in *Russo*, the fact that an act is tortious, would support an award of punitive damages, or is criminal, is not, by itself, a sufficient basis for an IIED claim. 241 Va. at 28, 400 S.E.2d at 162.

Walmart's and Greer's conduct was not outrageous or intolerable. Davis has pleaded only that Greer reviewed information from various sources which gave rise to the suspicion that Davis was attempting to fill a prescription too soon. After being unable to contact the prescribing doctor, Greer reported her

21

suspicion to the Sheriff's office, together with some information on which it was based. When the Sheriff opted to investigate in person, Greer and Walmart cooperated with Deputy Harney's investigation, and complied with the requests he made pursuant to that investigation. Far from being "outrageous" or "intolerable," an individual is expected to cooperate with law enforcement, and such cooperation is actually required by law. *See* Va. Code §§ 18.2-460 and 463.

Davis relies upon *Almy v. Grisham*, 273 Va. 68, 639 S.E.2d 182 (2007) in support of her argument that she has pleaded a claim for intentional infliction of emotional distress. However, the facts of *Almy* demonstrate that Walmart's and Greer's actions do not amount to anything near the level of the deliberate and improper actions undertaken by the defendants in that case. In *Almy*, one of the defendants expressed his intent to have the plaintiff "really, really suffer." *Id*. at 78, 639 S.E.2d at 187. The plaintiff alleged that the defendants deliberately devised a scheme to falsely accuse the plaintiff of taking action that she had not taken. *Id.* The plaintiff also alleged that the defendants purposely provided false information to a police officer in an attempt to harm her. *Id*. The facts alleged in the First Amended Complaint have no similarity with the facts of the *Almy* case, and Davis' citation to *Almy* does nothing to support her claim. Davis has simply failed to plead any behavior on the part of Walmart or Greer that

is "utterly intolerable in a civilized community," *Almy*, 273 Va. at 78, 639 S.E.2d at 187, and her claim for IIED was properly dismissed.

Additionally, it is apparent that Davis previously realized she could not state a claim for IIED against Walmart and Greer, because she failed to include that claim in her proposed second amended complaint. Because the District Court dismissed Davis' IIED claim without prejudice and Davis did not seek leave to amend her IIED claim, Davis waived any appellate review of the District Court's dismissal of that claim. *U.S. ex rel. Atkinson v. PA. Shipbuilding Co.*, 473 F.3d 506, 516–18 (3d Cir. 2007) (holding that an appellant waived his right to challenge the district court's dismissal of claims without prejudice for pleading deficiencies where the appellant failed to reassert said claims in his amended pleading). *See also Goode v. Cent. Virginia Legal Aid Soc'y, Inc.*, 807 F.3d 619, 629 (4th Cir. 2015) (holding that the appellate court lacked jurisdiction to review a complaint where the appellant failed to seek leave to amend claims dismissed without prejudice).

The First Amended Complaint failed to set forth facts to support any of the elements of IIED. The District Court analyzed the First Amended Complaint and correctly ruled that the allegations were insufficient to support such a claim under Virginia law. Furthermore, Davis abandoned this claim when she sought leave to amend. Accordingly, the District Court's ruling should be affirmed.

D.   *Davis failed to state a claim for assumption of duty against Walmart and Greer because Virginia does not recognize such claim as an independent cause of action and the First Amended Complaint failed to allege any specific duty undertaken by Walmart and Greer.*

1.   <u>Virginia does not recognize assumption of duty as an independent cause of action.</u>

The District Court properly dismissed Davis' claim for "assumption of duty" because Virginia does not recognize that cause of action. Duty is one of the four elements required in a negligence action. *See Goddard v. Protective Life Corp.*, 82 F. Supp. 2d 545, 551 (E.D. Va. 2000) (citation omitted). Assumption of duty is a common law principle adopted by Virginia which permits a plaintiff to establish the existence of a legal duty. *Didato v. Strehler*, 262 Va. 617, 628-29, 554 S.E.2d 42, 48 (2001) (citing *Nolde Bros., Inc. v. Wray*, 221 Va. 25, 28, 266 S.E.2d 882, 884 (1980)). Therefore, assumption of duty is not a cause of action in and of itself, but is rather a means by which a plaintiff may establish one of the four necessary elements of a negligence claim. The District Court's dismissal of Davis' "assumption of duty" claim was therefore proper.

Davis' argument that "assumption of duty may be asserted as a separate claim from negligence" relies on three authorities.  (Br. of Appellant at 35.) An analysis of these authorities  reveals that none hold that assumption of duty is a freestanding tort, but rather that a plaintiff may use assumption of duty as a legal theory for establishing the existence of a duty as a predicate to recovering in

tort. *Didato*, for example, was a medical malpractice action in which the court noted that the plaintiffs could recover if they could establish that (1) the standard of care required the defendants to communicate the results of tests to the plaintiffs; (2) the defendants breached this duty; and (3) this breach was a proximate cause of the plaintiff's injuries. *Didato*, 262 Va. at 627, 554 S.E.2d at 47. These factors, of course, are the familiar elements of the tort of negligence. The court noted that even if the plaintiffs could not establish that the applicable standard of care required the communication of information, the plaintiffs had pleaded sufficient facts to find the defendants had assumed a duty to them. *Id.* at 630, 554 S.E.2d at 48.

Essentially, the *Didato* court recognized that where one duty could not be proven – in that case the duty to abide by the standard of care – a plaintiff could still recover for negligence by showing that the defendant had assumed a separate duty. This is the same approach taken in *Kellerman v. McDonough*, 278 Va. 478, 684 S.E.2d 786 (2009), a wrongful death case in which the court found that the plaintiff pleaded that the defendant undertook, or assumed, "a duty to render services to [plaintiff], that [defendant] breached this duty, and the breach was a proximate cause of [plaintiff's] injuries and death." *Id.* at 490, S.E.2d at 791-92.

The treatment of assumption of duty in *Burns v. Gagnon*, 283 Va. 657, 727 S.E.2d 634 (2012), once again demonstrates that it is not a stand-alone

theory of recovery. There, the court recognized that "[i]n accordance with the principle of assumption of a duty, an actor who fails to exercise reasonable care in performing his undertaking may be subject to liability for physical harm caused not only to the one to whom he has agreed to render services, but also to a third person." *Burns*, 283 Va. at 672, 727 S.E.2d at 643-44. The *Burns* court therefore recognized that proving the assumption of a duty was just the predicate step to recovery for negligence, and that the plaintiff must also prove breach, causation and damages. Together, these authorities make clear that assumption of duty is not a freestanding tort in Virginia, but is instead a means of establishing duty as a prerequisite to recovery for negligence.

> 2.     Davis waived the negligence claims she now asserts were mislabeled as assumption of duty.

Davis' argument that her claim for "assumption of duty" should be allowed because she mislabeled it is unpersuasive. Even if this Court finds that the "assumption of duty" claim was a mere mislabeling, the claims that Davis urges the Court to consider in its place either do not exist in Virginia or were waived by Davis. Count VI alleges that Walmart assumed a duty to its customers to properly train its employees. Negligent training, however, is not a recognized tort in Virginia. *Muse v. Schleiden*, 349 F. Supp. 2d 990, 1001 (E.D. Va. 2004) (noting that Virginia does not recognize a claim for negligent supervision); *Morgan v. Wal-Mart Stores East, LP*, 2010 U.S. Dist. LEXIS 116400, *10-14 (E.D. Va. Nov.

26

1, 2010). In recognition of this fact, Davis withdrew a previous claim for negligent training against Walmart, and she should not be permitted to restate it on appeal. (Davis' Mem. in Opp. to Defendant Walmart Stores East, L.P.'s Mot. to Dismiss, ECF No. 105, at 8.)

Count V of Davis' First Amended Complaint alleges that Greer "assumed a duty to not voluntarily harm any Walmart pharmacy customer in servicing their prescription needs, including Ms. Davis." Davis now urges the Court to treat Count V as a mislabeled claim for negligence. This argument must fail, however, because Davis already stated a claim for negligence in her First Amended Complaint.[2] The District Court dismissed this claim with the rest of those brought by Davis. Davis did not raise the issue of the dismissal of her negligence claim in her Brief, however, and has therefore waived that issue. Fed. R. App. P. 28(a)(5); *Canady v. Crestar Mortg. Corp.*, 109 F.3d 969, 973 (4th Cir. 1997); *W. Va. CWP Fund v. Stacy*, 671 F.3d 378, 389 (4th Cir. 2011). Because Davis has waived the issue of negligence on appeal, her illogical argument that this Court should interpret Count V as a mislabeled negligence claim must fail.[3]

---

[2] In fact, the language of Paragraph 182 of Davis' First Amended Complaint (JA 43), which provides the basis for her "assumption of duty" claim against Greer, is exactly the same as the language of Paragraph 170 of Davis' First Amended Complaint (JA 41), which provides the basis for her negligence claim against Greer.

[3] Furthermore, like her IIED claim, Davis abandoned her assumption of duty claim by failing to assert it in her proposed second amended complaint, and therefore

3.    <u>Walmart and Greer did not affirmatively act to
assume a duty to Davis.</u>

Finally, even if the Court reviews the unpreserved issue of the District Court's dismissal of Davis' negligence claim under the assumption of duty framework, the Court should affirm the District Court's determination to dismiss Davis' negligence claim. The application of the assumption of duty theory requires that the defendant take an "affirmative act" to assume a duty. *Davies v. Virginia CVS Pharmacy, LLC*, No. 7:14–cv–00175, 2014 WL 6460787, at *3 (W.D. Va. Nov. 17, 2014). Davis' First Amended Complaint failed to allege any facts showing that Greer affirmatively acted to assume a duty to Davis.

The narrow line of cases where Virginia courts have been willing to apply the assumption of duty doctrine all involve conspicuous undertakings of a duty. For example, in *Kellerman v. McDonough*, the plaintiff's minor child was spending the night at the home of the defendant, who expressly agreed to not allow the child to ride in vehicles with inexperienced drivers.   278 Va. 478, 484-485, 684 S.E.2d 786, 789 (2009). Later that night, the child was killed due to a vehicle accident while riding with a teenage boy.   *Id.* at 486, 684 S.E.2d at 789. The Virginia Supreme Court held that those circumstances were sufficient to support a negligence claim based upon an assumption of duty theory because the defendant

---

waived review of its dismissal on appeal. *PA. Shipbuilding Co.*, 473 F.3d at 516–18 (3d Cir. 2007), *Goode*, 807 F.3d at 629.

expressly related to the plaintiffs that she would keep their child from riding with inexperienced drivers. *Id.* at 490, 684 S.E.2d at 791.

Virginia courts have declined to find that a security company installing alarm systems on a store assumed a duty to protect its property (*Jeannie's Jewelers, Inc. v. ADT Sec. Servs., Inc.*, No. 1:12cv265, 2012 WL 1869319 (E.D. Va. May 22, 2012)), or that a mall security company voluntarily assumes a duty in tort to protect invitees. *Bosworth v. Vornado Realty L.P.*, 83 Va. Cir. 549, 2010 WL 8925838 (Fairfax Co. Cir. Ct. Dec. 20, 2000)).

Davis' First Amended Complaint made the vague, conclusory, and inaccurate statement that Greer "assumed a duty to not voluntarily harm any Walmart pharmacy customer in servicing their prescription needs," but failed to allege any facts supporting such a claim. Accordingly, she has failed to plead a negligence cause of action based upon an assumption of duty theory. Greer's employment as a pharmacist, standing alone, is not sufficient to support a legal finding that she assumed a special duty as to all customers entering her pharmacy. Davis attempts to stretch the assumption of duty doctrine beyond its intended boundaries, and failed to state a claim for negligence based upon that theory.[4]

---

[4] Another commonality of assumption of duty cases in Virginia is that, in all such cases, A promises to B to assume a duty to C. The instant case does not follow this essential feature of assumption of duty cases, because Plaintiff has alleged that A (Greer) directly assumed a duty to B (Davis).

For all of the above stated reasons, the District Court properly dismissed Davis' assumption of duty claim for failure to state a claim. Accordingly, the District Court's decision granting Greer's and Walmart's motions to dismiss should be affirmed.

> E.   Davis failed to state a § 1983 civil conspiracy claim against Greer and Walmart because the facts alleged fail to plausibly demonstrate any agreement between Greer, Walmart, and Harney to unlawfully arrest Davis.

Davis' First Amended Complaint fails to properly set forth a § 1983 claim, and the District Court's dismissal of this claim was therefore proper. Davis makes the conclusory statement that Greer conspired with Harney to bring about an unlawful arrest of Davis, and that Greer took steps in furtherance of this conspiracy. (JA 46.) However, Davis' recitation of facts does not include any allegation that Greer intended to have Davis arrested or even had knowledge that Harney would arrest her. In fact, the allegations are to the contrary. "[W]here a conspiracy is alleged, the plaintiff must plead facts amounting to more than 'parallel conduct and a bare assertion of conspiracy.... Without more, parallel conduct does not suggest conspiracy, and a conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality.'" *A Soc'y Without A Name v. Virginia*, 655 F.3d 342, 346 (4th Cir. 2011) (quoting *Twombly*, 550 U.S. at 556–57)). "The factual allegations must plausibly suggest agreement, rather than being merely consistent with agreement." *Id. See also*

30

*Gooden v. Howard County, Md.*, 954 F.2d 960, 969–70 (4th Cir. 1992) ("[C]ourts have...required that plaintiffs alleging unlawful intent in conspiracy claims under…§ 1983 plead specific facts in a nonconclusory fashion to survive a motion to dismiss."). Davis failed to plead specific facts as to Greer's intent. Rather, she merely pleaded Greer's parallel conduct and a conclusory allegation of agreement between Greer and Harney that is not plausible on its face. Thus, she has failed to state a claim for § 1983 conspiracy.

To state a claim for damages against an individual under § 1983, a plaintiff must allege: "(1) the deprivation of a right secured by the Constitution or a federal statute; (2) by a person; (3) acting under color of state law." *Jenkins v. Medford*, 119 F.3d 1156, 1159-60 (4th Cir. 1997).  Since private conduct, "no matter how discriminatory or wrongful," may not be redressed by a §1983 claim, *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999), "the ultimate issue in determining whether a person is subject to suit under § 1983 is the same question posed in cases arising under the Fourteenth Amendment: Is the alleged infringement of federal rights 'fairly attributable to the state?'" *Rendell-Baker v. Kohn*, 457 U.S. 830, 838 (1982).  Courts have set forth a number of tests for determining whether a private individual's actions are fairly attributable to the state.  *See Marsh v. Alabama*, 326 U.S. 501 (1946) ("public function" test); *Burton*

*v. Wilmington Parking Authority*, 365 U.S. 715 (1961) ("nexus" test); *Adickes v. S.H. Kress & Co*., 398 U.S. 144 (1970) ("joint action" test).

The undisputed facts establish that Davis does not have a viable § 1983 claim against Greer under any of these tests. Davis does not allege that Greer performed a public function, nor does she allege that there was an ongoing relationship between Greer and the State sufficient to satisfy the "nexus" test. Finally, Davis' allegations are insufficient to satisfy the "joint action" test. Courts have consistently held that providing information to a police officer does not amount to joint participation in state action under § 1983. *See Ginsberg v. Healey Car & Truck Leasing, Inc*., 189 F.3d 268 (2d Cir. 1999) ("Where, as here, a police officer exercises independent judgment in how to respond to a private party's legitimate request for assistance, the private party is not 'jointly engaged' in the officer's conduct so as to render it a state actor under Section 1983."); *Benavidez v. Gunnell*, 722 F.2d 615 (10th Cir. 1983) ("The mere furnishing of information to police officers does not constitute joint action under color of state law which renders a private citizen liable under § [ ] 1983...."); *Butler v. Goldblatt Bros., Inc*., 589 F.2d 323 (7th Cir. 1978) (granting summary judgment to private defendant on Section 1983 claim because defendant "did [nothing] more than supply information to police officers who then acted on their own initiative in arresting [plaintiff]"); *Sims v. Jefferson Downs Racing Assoc.*, 778 F.2d 1068 (5th Cir. 1985)

32

("The execution by a private party of a sworn complaint, which forms the basis for an arrest, is, without more, not sufficient to make the party's acts state action."); *Lee v. Patel*, 564 F. Supp. 755 (E.D. Va. 1983) ("[T]he unilateral action by a private person of filing a sworn complaint for an arrest warrant of another person suspected to have committed a crime does not constitute State action or action under color of State law."); *Chiles v. Crooks*, 708 F. Supp. 127 (D.S.C. 1989) ("It is well-settled that police reliance in making an arrest on the information given by the private party does not make the private party a state actor.") (citations and internal quotation marks omitted).

This is true even where the information provided to the police by the private actor is false. *Mark v. Furay*, 769 F.2d 1266, 1273 (7th Cir. 1985) ("[P]roviding false information to an arresting officer is not, by itself, sufficient to state a claim against the private party under § 1983.") (citations and internal quotation marks omitted); *Baez v. JetBlue Airways*, 745 F. Supp. 2d 214 (E.D.N.Y. 2010) ("[P]roviding false information to the police does not make a private individual ... a state actor and liable under § 1983.") (citations and internal quotation marks omitted); *Espinoza v. Walgreen Co*., No. 2:08CV00997DS, 2009 WL 2843345 (D. Utah Aug. 25, 2009).

In *Espinoza v. Walgreen Co*., the plaintiff sought recovery against Walgreens and two pharmacy employees who erroneously determined that a

prescription received from the plaintiff was false. *Id.* at *1. The employees called the police, who performed an investigation and determined that the prescription was not a forgery and so informed the Walgreen employees. *Id.* Nevertheless, the employees again called the police when the plaintiff returned to pick up her prescription and the plaintiff was arrested. *Id.* The court held that the "Plaintiff's allegation that the Walgreen Defendants actively misled police by falsely reporting that Plaintiff had given them a forged prescription, is insufficient to find joint action with the police." *Id.* at *3. Indeed, the court observed that this allegation undermined any allegation of an agreement, conspiracy, prearranged plan or cooperation. *Id.*

The facts of *Espinoza* are even more egregious than those alleged in this case. The undisputed facts establish that Greer was a private actor, that she merely provided information to law enforcement and obeyed the officer's request to identify Davis. Thus, Greer did not conspire with a state actor, and the District Court correctly determined that Davis failed to state a claim for her § 1983 conspiracy claim.

Davis has acknowledged that pleading a § 1983 conspiracy claim requires a mutual understanding among the parties to accomplish a common and unlawful plan. *Simmons v. Poe*, 47 F.3d 1370, 1378 (4th Cir. 1995) ("[T]he participants in the conspiracy must share the general conspiratorial objective.... [I]t

simply must be shown that there was a single plan, the essential nature and general scope of which [was] known to each person who is to be held responsible for its consequences.") (internal quotation marks and citations omitted). By no stretch of the imagination can the facts alleged in the First Amended Complaint be interpreted to support the claim that there was an agreement between Deputy Harney and Greer.

In her First Amended Complaint, Davis clearly pleaded that there was minimal contact between Greer and Harney and minimal communication between Harney and Walmart employees. (JA 27-29, 33.) Davis also acknowledged that her arrest was never discussed by Harney and Greer or other Walmart employees. Nonetheless, Davis now wants this Court to leap to the unwarranted inference that two brief exchanges between two individuals who did not know each other and had not previously communicated is enough to show that they formed a conspiracy to go about arresting Davis.

The standard for showing a conspiracy, and that Greer and Harney acted in concert, requires more than a fertile imagination and inferential leaps that the parties acted in a joint fashion. While Davis argues that the District Court granted improper inferences to Walmart and Greer, and interpreted the First Amended Complaint in a light most favorable to them, in fact the failure of the

First Amended Complaint involves the absence of any facts showing a concert or conspiracy among anyone. Consequently, the District Court's ruling was correct.

> F.    *Davis failed to state a medical malpractice claim against Greer and Walmart because their disclosure of Davis' prescription information to law enforcement does not constitute "medical malpractice" and was expressly permitted by statute.*

> 1.    <u>Under Virginia law, a pharmacist's only duty is to correctly fill prescriptions.</u>

The District Court properly dismissed Davis' claim for medical malpractice. Davis urges this Court to find that dismissal was in error because it was improper for the District Court to determine as a matter of law that the only duty a pharmacist in Virginia has to her patient is to fill the patient's prescriptions properly. Davis is incorrect for two reasons.

First, Davis previously abandoned this argument. In her Memorandum in Opposition to Greer's Motion to Dismiss, and citing with approval to *Goulmamine v. CVS Pharm., Inc.*, 138 F. Supp. 3d 652, 663 (E.D. Va. 2015), Davis conceded that Greer "is likely correct that Greer's alleged conduct falls outside of the Act's definition of 'malpractice' given this Court has previously recognized that the only known professional duty imposed on a pharmacist by Virginia law is correctly filling a prescription." (Davis' Mem. in Opp. to Greer's Mot. to Dismiss, ECF No. 103, at 25.) Having therefore abandoned the argument that pharmacists in Virginia have any but the single duty recognized in

*Goulmamine*, this Court should not permit Davis to resurrect it on appeal. *Havee v. Belk*, 775 F.2d 1209, 1220 (4th Cir. 1985).

Second, to the extent this Court is willing to hear Davis' argument despite her earlier abandonment, her argument is still mistaken. While Davis is correct that Virginia Code § 8.01-581.20(B) holds that "any issue as to the standard of care to be applied shall be determined by the jury ….", this statute was irrelevant to the District Court's ruling. Again, Virginia decisional law requires that pharmacists have but one duty: to ensure they properly fill prescriptions. *Goulmamine*, 138 F. Supp. 3d at 663. Because there is only one duty, the District Court did not have to make any determination as to which duty applied, and there was no "issue" over which standard to apply. The District Court was therefore free to apply the facts pleaded by Davis to this one duty, and, having made the determination that these facts did not entitle Davis to relief, dismiss her claim for medical malpractice. *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 498 (4th Cir. 2005) (12(b)(6) dismissal is appropriate where "it appears certain that the plaintiff can prove no set of facts which would support [her] claim and would entitle [her] to relief") (citation omitted).

2.      Davis' reliance upon Virginia statutes and
        regulations governing pharmacists is misplaced
        because they do not determine the standard of care
        and the facts alleged do not demonstrate that
        Walmart or Greer violated those standards.

Davis claims that Va. Code § 54.1-3320 and 18 Va. Admin. Code § 110-20-25 create additional applicable duties of care. Davis is mistaken. Va. Code § 54.1-3320 only lists those steps a pharmacist shall take in order to discharge her duty to correctly fill a prescription. Va. Code § 54.1-3320. Additionally, in Virginia the standard of care in medical malpractice actions is fixed by Va. Code § 8.01-581.20. By its language, this statute necessarily requires that the standard of care be developed through decisional law, usually with the benefit of expert testimony, and not by the rote application of statutes. Va. Code § 8.01-581.20 (defining the standard of care as "that degree of skill and diligence practiced by a reasonably prudent practitioner"); *Webb v. Smith*, 276 Va. 305, 308, 661 S.E.2d 457, 459 (2008) ("[E]xpert testimony is ordinarily necessary to establish the appropriate standard of care.") (citations omitted). Through this process, statutory authorities such as those cited by Davis may be incorporated into the applicable standard of care, or they may not. *See Henning v. Thomas*, 235 Va. 181, 186, 366 S.E.2d 109, 112 (1988) (expert knowledge of standard of care "may derive from study, experience, or both"). The authorities Davis relies on were promulgated before the *Goulmamine* decision, but that case did not incorporate them into the

applicable standard of care. Those authorities are therefore irrelevant to the issue of a pharmacist's standard of care.[5]

Additionally, Davis has not pleaded facts demonstrating any violation of those authorities. Greer's reporting of possible drug diversion to the police for their investigation is not in conflict with any provision of Va. Code § 54.1-3320, and in fact directly meets its mandate that a pharmacist review a prescription to verify its accuracy and for indications of "clinical misuse or abuse…and duplication of therapy." Va. Code § 54.1-3320(1) and 3320(6). Greer also complied with 18 Va. Admin. Code § 110-20-25, because her disclosure of Davis' health information was motivated by a good faith belief that "the information disclosed constitutes evidence of a crime that occurred on [her] premises," such that the disclosure was specifically authorized by Virginia law. Va. Code § 32.1-127.1:03(31).

3.  Greer and Walmart's disclosure of Davis' prescription information to law enforcement was expressly permitted under Virginia law.

Davis' reliance on *Fairfax Hosp. by & Through INOVA Health Sys. Hosps. v. Curtis*, 254 Va. 437, 492 S.E.2d 642 (1997) is also misplaced. That case

---

[5]Because of the manner by which the applicable standard of care in medical malpractice actions is developed, Davis' reliance solely on statutory authorities as the basis for her medical malpractice claim is improper. The proper place, if any, for this argument is in Davis' claim for negligence *per se*.

holds that "absent a serious danger to the patient or others, a health care provider owes a duty to a patient not to disclose information gained from the patient during the course of treatment without the patient's authorization." *Fairfax Hosp. by & Through INOVA Health Sys. Hosps. v. Curtis*, 254 Va. 437, 443, 492 S.E.2d 642, 644 (1997). This rule does not apply to the instant matter for two reasons. First, Greer did not gain the disclosed information at issue from Davis, but rather from the PMP. Second, the impermissible obtaining of narcotics is a crime which had the clear potential to pose a danger both to Davis and to others. For reasons previously stated, Greer had a reasonable suspicion that Davis was impermissibly obtaining narcotics.

The *Curtis* court held that healthcare providers have a duty to not disclose private information "in the absence of a statutory command to the contrary, or absent a serious danger to the patient or others." *Curtis*, 254 Va. at 442, 492 S.E.2d at 644. However, in this case, Va. Code § 54.1-3408.2 and Va. Code § 32.1-127.1:03(D)(31) specifically clothed Greer with authority to contact law enforcement. Davis' argument is, essentially, that because these statutes permit, rather than require, a pharmacist to disclose health care information to law enforcement, a pharmacist who discloses health care information pursuant to those statutes has committed malpractice. This reading of *Curtis* is completely unsupported and would yield absurd results.

In *Smith v. Kryzanowski*, 69 Va. Cir. 185 (Richmond 2005), the court sustained a demurrer and distinguished *Curtis*, "where the disclosure was not authorized by law," from the circumstances of *Smith*, "where the disclosure was accomplished under authority granted by law." *Id.* (citing Va. Code § 16.1-265). The *Smith* court noted that to survive a demurrer, the plaintiff was required to "allege how and to what extent each of the parties failed to follow [attorney-issued subpoena] procedures in order to determine whether any right of action exists." *Id.* As *Smith* illustrates, the relevant inquiry is whether the disclosure was <u>authorized</u>, or permitted, by law, rather than whether the disclosure was <u>mandated</u> by law, as Davis suggests.  In *Curtis*, the disclosing health care providers had no permissible reason to disclose the health care records of the patient without her consent.

Davis' reading of *Curtis*, that a healthcare provider breaches a duty to its patients when it is only permitted but not required to disclose the patient's healthcare information, would yield absurd results. Virginia Code § 32.1-127.1:03(D) alone contains 36 subparts which detail exceptions to the rule that a healthcare entity may not disclose an individual's health records without the individual's consent. For example, one exception provides that a healthcare entity may disclose an individual's health records "[t]o third-party payors and their agents for purposes of reimbursement." Va. Code § 32.1-127.1:03(D)(17). However, if the Davis' interpretation of *Curtis* was correct, healthcare entities

41

making disclosures of an individual's health records for this purpose could be sued by the individual because this exception merely _permits_ rather than _requires_ disclosure.

Here, the disclosure was expressly permitted by Va. Code § 54.1-3408.2 and Va. Code § 32.1-127.1:03(D)(31). Davis has not alleged any statutory requirements for permissive disclosure pursuant to those statutes that was not met by Greer in this case. Thus, the District Court properly dismissed Davis' medical malpractice claim for failure to state a claim.

### 4.   The facts alleged do not fall within the purview of medical malpractice under Virginia law.

Further, Davis' claim does not fall under the aegis of the Medical Malpractice Act (the "Act"). "Malpractice" under the Act is defined as "any tort action or breach of contract action for personal injuries or wrongful death, based on health care or professional services rendered, or which should have been rendered, by a health care provider, to a patient." Va. Code § 8.01-581.1. "Health care" is defined as "any act…or treatment performed or furnished, or which should have been performed or furnished, by any health care provider for, to, or on behalf of a patient during the patient's medical diagnosis, care, treatment or confinement." *Id.*

Greer and Walmart did not provide (1) health care or (2) professional services to Davis on the day of the incident. Greer and Walmart did not provide

health care to Davis because they did not perform an act "for, to, or on behalf of" Davis. Instead, the act they performed was the reporting of a suspected crime. Similarly, because Greer suspected Davis of committing a crime, Greer and Walmart did not fill her prescription or provide her with any other professional service. Their actions therefore do not meet the definitional requirements of the Act.[6] Furthermore, because Davis' allegations "do not involve a tort committed during the course of a medical procedure or treatment administered on a patient's behalf during the course of patient care," they cannot support a claim for medical malpractice. *Alcoy v. Valley Nursing Homes, Inc.*, 272 Va. 37, 42, 630 S.E.2d 301, 303 (2006).

Finally, Davis has not pleaded sufficient facts to meet the elements of a claim for medical malpractice. "To prevail in an action for professional malpractice, a plaintiff must prove that the defendant's breach was the proximate cause of the plaintiff's injuries." *Gedrich v. Fairfax Cty. Dep't of Family Servs.*, 282 F. Supp. 2d 439, 477 (E.D. Va. 2003) (citation omitted). For the reasons discussed in the argument section related to Davis' claim for negligence per se, *infra*, Davis has not pleaded sufficient facts to show that any action of Greer and Walmart proximately caused the injuries of which she now complains.

---

[6] The mere handling of patient information such as that alleged by Davis does not constitute "health care" or "professional services" within the meaning of the Act. *Petter v. Acevedo*, 31 Va. Cir. 7, 9 (Alexandria 1993).

G.   *Davis failed to state a negligence per se claim against Greer and Walmart because Davis' alleged injuries were not a reasonably foreseeable result of Greer's disclosure of Davis' PMP information, which was expressly permitted by statute.*

1.   Davis' alleged injuries were not a reasonably foreseeable result of Greer's disclosure of Davis' PMP information to law enforcement.

The District Court's dismissal of Davis' claim for negligence per se was not in error.[7]  Davis argues that Greer violated Va. Code § 54.1-2525(A)-(B), which makes it unlawful to disclose PMP data in certain circumstances.  (Br. of Appellant at 49.) The District Court found that § 54.1-2525(A)-(B) could not serve as the basis for Davis' negligence per se claim, because it "establishes a standard of conduct designed to protect individual privacy," and does "not create a duty to safeguard against false arrest." (JA 317.) Davis argues that § 54.1-2525(A)-(B) applies because the "harm" it was intended to prevent was the unauthorized disclosure of PMP data, and because the District Court was not permitted to determine whether violation of this statute proximately caused Davis' damages. (Br. of Appellant at 51.)

Davis' critique of the District Court's opinion is incorrect for a number of reasons.  First, Davis mischaracterizes the applicable law.  It is not the law, as

---

[7] Like her IIED and assumption of duty claims, Davis also abandoned her negligence per se claim by failing to assert it in her proposed second amended complaint, waiving appellate review of its dismissal. *PA. Shipbuilding Co.*, 473 F.3d at 516–18 (3d Cir. 2007), *Goode*, 807 F.3d at 629.

Davis would have this Court believe, that whether a statutory violation proximately caused a plaintiff's injuries "is a factual issue to be decided by the jury." (Br. of Appellant at 48, citing *Kaltman v. All Am. Pest Control, Inc.*, 281 Va. 483, 496, 706 S.E.2d 864, 872 (2011)). The actual legal principle is not that the issue of proximate cause is *always* an issue for the jury, but that it is "*generally* a factual issue to be decided by the trier of fact." *Kaltman*, 281 Va. at 496, 706 S.E.2d at 872 (emphasis added). If, however, "reasonable persons may not differ in their conclusions that such negligence was such a cause," then it is proper for a trial court to decide the issue as a matter of law. *Thomas v. Settle*, 247 Va. 15, 20, 439 S.E.2d 360, 363 (1994) (citation omitted). Davis' omission of the word "generally" from her Brief is therefore quite significant, because it is that word which permits the District Court to decide the issue of proximate cause in appropriate cases.

In the instant case, the District Court properly determined that, as a matter of law, Greer's disclosure of Davis' PMP information was not the proximate cause of her damages. "The proximate cause of an event is that act or omission which, in natural and continuous sequence, unbroken by an efficient intervening cause, produces that event, and without which that event would not have occurred." *Ford Motor Co. v. Boomer*, 285 Va. 141, 150, 736 S.E.2d 724, 728 (2013). "Foreseeability is relevant to a determination of proximate cause. A negligent defendant is not liable for consequences which could not be expected to happen."

*Va. Elec. & Power Co. v. Savoy Constr. Co.*, 224 Va. 36, 46, 294 S.E.2d 811, 818 (1982) (citations omitted). Greer and Walmart are not liable to Davis for negligence per se because Davis' alleged injuries were not reasonably foreseeable. As the District Court correctly noted, the injuries about which Davis complains were – if caused by any actionable tort – caused by her alleged false arrest, not by the disclosure of her PMP information to law enforcement. (JA 317.) Greer and Walmart could not possibly have foreseen that, by making a telephone call to report suspected criminal activity, Davis would be quickly arrested without any independent police investigation, arraigned, denied bond, jailed for an extended period, deprived of medical attention, driven to attempt suicide, and would lose her security clearance and any associated employment.

In fact, the allegations that Davis levels against Deputy Harney are so extreme that, if true, constitute an intermediate cause and bar Davis' recovery against Greer and Walmart. "[T]he extraordinary manner in which harm occurs may prevent the primary actor's conduct from being the proximate cause of an event." *Banks v. Richmond*, 232 Va. 130, 137, 348 S.E.2d 280, 283 (1986). Davis alleged that Harney informed Walmart that he had a "stack" of paperwork regarding Davis when, in fact, he did not; that he did not speak with Greer about the PMP information or perform any independent investigation of Davis whatsoever before arresting her; that Harney told Greer he wanted to talk to Davis

about "something" and seemed "very anxious" to get to the pharmacy and "pretty eager" in his need to speak to Davis; that Harney acted in disregard of "at least one controlling General Order of the Sheriff's Department;" and that Harney lied to Davis about his knowledge of her involvement in other crimes. Essentially, Davis alleges that, absent Harney's misconduct, her innocence would have been discovered prior to her arrest. Because Davis alleges that she would not have been arrested absent Harney's extreme misconduct, any negligence on the part of Greer and Walmart cannot be the proximate cause of Davis' damages. *See Banks*, 232 Va. at 136, 348 S.E.2d 283 (finding that the negligence of a maintenance worker checking for a gas leak was not foreseeable by the city that was responsible for repairing the leak, such that the city did not proximately cause and was not liable for damages from an explosion).

2. <u>Greer's and Walmart's disclosure of Davis' PMP information was expressly permitted under Virginia law and Davis' alleged injuries are not the type of harm which the statutes on which she relies were meant to prevent.</u>

Section 54.1-2525(A)-(B) is not a proper basis for Davis' negligence per se claim because the harm she allegedly suffered is not the type against which the statute was intended to protect. The weakness of Davis' argument is revealed by her assertion that "the damages flowing from the unlawful breach of privacy include the subsequent arrest by Deputy Harney." (Br. of Appellant at 51). In an

effort to stretch § 54.1-2525(A)-(B) to cover her alleged harm, Davis conflates the concept of an actionable tort with damages that are recoverable for a tort. An improper arrest such as that alleged by Davis is not a component of a plaintiff's damages – it is a tort that may form the basis for a recovery of damages. In the instant matter, Davis' damages are related to her allegedly false arrest, a harm which § 54.1-2525(A)-(B) simply does not address. The District Court is correct to note that the General Assembly did not enact § 54.1-2525(A)-(B) to guard against false arrest, and its dismissal of Davis' claim for negligence *per se* based on that statute was proper.

To the extent that Davis argues the simple act of disclosing her PMP information is harm in and of itself, Davis' argument must still fail. Any interpretation of § 54.1-2525(A)-(B) which concludes it was enacted to prevent harm caused by the act of disclosing medical information is an overly simplistic interpretation of that statute. It is not the mere act of disclosure itself that causes harm, but the identity of the individual to whom it is disclosed and what that individual chooses to do with it. Additionally, it is not logical to interpret § 54.1-2525(A)-(B) as prohibiting the disclosure of private information to law enforcement, particularly in the face of Virginia's health records privacy statute, which explicitly authorizes such a report. Va. Code § 32.1-127.1:03(C)(31). On

the facts pleaded by Davis, her injuries, if any, were caused by her false arrest, not Greer's act of disclosing her information to law enforcement.

Davis also makes a claim for negligence per se based on the application of 18 Va. Admin. Code § 110-20-25(2) and (4). This argument should also fail as a matter of law. To begin with, for the same reasons as those discussed, *supra*, Davis cannot demonstrate proximate cause between Greer's and Walmart's actions and her alleged injuries. As to subsection 2 specifically, and its prohibition on breaching confidentiality, Greer and Walmart did not violate this regulation. Subsection 2 permits confidences to be breached when "required or permitted by applicable law."   18 Va. Admin. Code § 110-20-25(2). Greer and Walmart therefore did not violate this regulation, because Va. Code § 32.1-127.1:03(C)(31) specifically requires that a pharmacist such as Greer may report private health information to law enforcement if she believed in good faith that Davis was attempting to commit a crime.  Va. Code § 32.1-127.1:03(C)(31).[8]

Davis' argument regarding both 18 Va. Admin. Code § 110-20-25(2) and (4) is also incorrect because she misapplies and draws erroneous conclusions from the law. By citing *Schlimmer* for the proposition that "disputes as to whether particular conduct violated a legislative enactment should be decided by the jury,"

---

[8] Va. Code § 18.2-258.1 makes it a crime to attempt to obtain a controlled substance by "(i) fraud, deceit, misrepresentation, embezzlement, or subterfuge," or "(iii) by the concealment of a material fact."

Davis' argument once again relies on a misstatement of the law. (Br. of Appellant at 53). In actuality, as with almost any decision requiring a finding of fact, the trial court may rule on the matter when reasonable minds cannot differ. *Kimberlin v. Pm Transp.*, 264 Va. 261, 268, 563 S.E.2d 665, 668 (2002). The District Court was therefore free to determine whether reasonable minds could differ regarding the interpretation of this regulation. The District Court's reasoning that "no court has ever construed these regulations as inhibiting law enforcement from using the information base to investigate suspicious prescription activity" is a valid and compelling explanation for its conclusion that these regulations were not intended to protect against the harm of which Davis complains. Notably, Davis offers no authority to contradict this assertion. The District Court's ruling should therefore be affirmed.

> H    *Davis' state law claims were properly dismissed and Davis failed to state a claim under said theories because Greer is entitled to immunity pursuant to Va. Code § 54.1-3408.2; therefore, Davis' state law claims against Greer and Walmart are barred.*

Virginia Code § 54.1-3408 provides Walmart and Greer with immunity from Davis' state law claims. The dismissal of Davis' claims for false imprisonment, intentional infliction of emotional distress, assumption of duty, medical malpractice, and negligence per se was therefore proper on this

50

independent basis, and the District Court's dismissal of these claims should not be overturned.

Pharmacists have a duty under state and federal law to cooperate with law enforcement and to ensure that controlled substances are properly prescribed and dispensed. At the federal level, this mandate is found in 21 C.F.R. § 1306.04(a), which imposes upon pharmacists a duty to assure that prescriptions are issued for legitimate medical purposes and in the course of professional treatment. *Id.* Likewise, the regulations of the Virginia Board of Pharmacy provide that a pharmacist cannot return a prescription determined to be forged to the person presenting it, and that a pharmacist in such a situation should refer such prescription to law enforcement for investigation. 18 Va. Admin. Code § 110-20-270.

In furtherance of its goal of preventing prescription abuse, the Virginia Department of Health Professions implemented the Virginia Prescription Monitoring Program ("PMP") pursuant to Va. Code § 54.1-2519 *et seq.* The PMP imposes stringent reporting requirements upon pharmacists and provides practitioners with immediate access to the prescription histories of patients. Mindful of the pressures on pharmacists under federal and state laws governing the dispensing of controlled substances, the Virginia General Assembly enacted a civil

immunity statute for pharmacists who report suspected fraudulent behavior to law enforcement. Va. Code § 54.1-3408.2 provides:

> Any person authorized to prescribe, dispense, or administer controlled substances pursuant to § 54.1-3408 who has reason to suspect that a person has obtained or attempted to obtain a controlled substance or prescription for a controlled substance by fraud or deceit, may report the activity to the local law-enforcement agency for investigation. Any person who, in good faith, makes a report or furnishes information or records to a law-enforcement officer or entity pursuant to this section shall not be liable for civil damages in connection with making such report or furnishing such information or records.

As a pharmacist, Greer is authorized by § 54.1-3408(B)(2) to dispense controlled substances. Code § 54.1-3408.2 therefore applies to Greer and, because Davis' claims against Walmart are derivative of Greer's actions, to Walmart. Pursuant to § 54.1-3408.2, Walmart and Greer are immune from civil damages allegedly arising from Greer's reporting questionable activity to law-enforcement if: (1) Greer had reason to suspect that Davis was attempting to obtain Adderall by fraud or deceit, and (2) Greer made the report in good faith. The factual allegations in the First Amended Complaint, even when taken in the light most favorable to Davis, satisfy both elements of § 54.1-3408.2. When the face of the complaint clearly reveals the existence of a meritorious affirmative defense, dismissal pursuant to Rule 12(b)(6) is appropriate. *Brooks v. City of Winston–Salem, North Carolina,* 85 F.3d 178, 181 (4th Cir.1996); *see also Echols v. Sheriff of Bertie Cty.*,

No. 2:14-CV-33-FL, 2015 WL 5737394, at *4 (E.D.N.C. Aug. 14, 2015), *aff'd sub nom. Echols v. Sheriff of Bertie Cty.*, 638 F. App'x 242 (4th Cir. 2016) ("[W]hen the grounds for dismissal appear on the face of the pleadings, a defendant may properly assert these affirmative defenses through a Rule 12(b)(6) motion to dismiss."). Therefore, all state law claims brought by Davis against Walmart and Greer were properly dismissed.

1.    Greer had reason to suspect Davis was attempting
to obtain Adderall by fraud or deceit.

The information Greer obtained from Virginia's PMP provided Greer with a good faith reason to suspect that Davis was attempting to obtain a Schedule II drug by fraud or deceit. Based upon the allegations of the First Amended Complaint, Greer was concerned that Davis was filling her prescription "too soon." This concern was based on the following facts pleaded by Davis and known to Greer: (1) Davis presented a prescription for a controlled substance; (2) Davis presented the prescription on a Saturday, when Greer could not contact the prescribing physician; (3) Davis stated that she did not have health insurance and expressed the desire to pay for her prescription with cash; (4) Greer's review of Davis' PMP data disclosed that Davis had filled an identical prescription at another pharmacy just four days earlier; (5) Greer noticed a "pattern" Davis had established, whereby she "would fill two prescriptions for a one month supply for Adderall within a few days of each other ...."; and (6) in contravention of federal

53

law,[9] the prescription presented to Greer, which was identical to that just filled by Davis, had no limiting instructions from the prescribing physician as to the earliest date on which it could be filled. Taken as a whole, the facts alleged in the First Amended Complaint demonstrate that Greer had reason to suspect that Davis was attempting to improperly obtain a prescription by fraud or deceit. Importantly, § 54.1-3408.2 merely requires that Greer had "reason to suspect" fraud or deceit, and does not require absolute proof or even probable cause.

Davis places special emphasis on her allegation that Greer believed the prescription provided by Davis was *facially* valid.[10] The facial validity of a prescription, however, does not mean that its legitimacy may not be called into question by external information such as that obtained from the PMP and by other circumstances. In fact, the ability of individuals to provide fraudulent prescriptions that appear facially valid is the entire reason the PMP is needed. Based upon the entirety of the information available to her at the time, including Davis' habit of pharmacy hopping and filling identical Adderall prescriptions within days of each

---

[9] See 21 U.S.C. §§ 821, 871; 21 C.F.R. §1306.12(b)(1)(ii) ("An individual practitioner may issue multiple prescriptions authorizing the patient to receive a total of up to 90-day supply of a Schedule II controlled substance provided . . . the individual practitioner provides written instructions on each prescription indicating the earliest date on which a pharmacy may fill each prescription").

[10] Davis conflates Greer's conclusion that the prescription appeared facially valid with Greer having absolute knowledge of the validity of the prescription. This is exactly the type of unsupported, conclusory allegation that the Court is not bound to accept as true when determining whether a complaint has failed to state a claim.

other over the previous six months, Greer reasonably suspected that the prescription provided to her was not for a legitimate medical purpose.

2.     Greer acted in good faith.

The First Amended Complaint contains no facts supporting a reasonable inference that Greer was not acting in good faith when she reported the suspicious activity to law enforcement. "While the term 'good faith' has no precise definition, it means, among other things, an honest belief, a lack of malice, and the intent to perform all lawful obligations. A person who acts on a belief or on an opinion honestly held is not punishable under the law merely because that honest belief turns out to be incorrect or wrong." *United States v. Hirschfeld*, 964 F.2d 318, 322 (4th Cir. 1992) (jury instruction on good faith); *Lawton v. Walker*, 231 Va. 247, 343 S.E.2d 335 (1986) ("Good faith does not encompass a concept of negligence; the test is a subjective one. An act is deemed to be done in good faith . . . if it is done honestly, whether or not it is performed negligently."). Courts are free to determine the issue of good faith as a matter of law. *Pallas v. Zaharopoulos*, 219 Va. 751, 250 S.E.2d 357 (1979); *Moore v. Potomac Sav. Bank*, 160 Va. 597,169 S.E. 922 (1933); *Miller v. Commonwealth*, 25 Va. App. 727, 492 S.E.2d 482 (1997); *Reed v. Commonwealth*, 6 Va. App. 65, 366, S.E.2d 274 (1988).

The facts alleged in Davis' First Amended Complaint, taken in the light most favorable to Davis, demonstrate that, by contacting law enforcement and identifying Davis to law enforcement, Greer's only intent was to honestly convey information related to questionable activity. Davis' description of Greer's interaction with the dispatcher and Deputy Harney reflect that Greer at all times imparted honest and correct factual information regarding duplicate prescriptions, and that she reported the "red flags" she observed to Deputy Harney. In fact, Davis herself concedes in her First Amended Complaint that "Greer was concerned that Ms. Davis was attempting to fill the prescription too soon." (JA 23.) Greer's conduct, motivated by the type of concern Davis herself alleges, falls directly within the behavior the immunity statute was designed to protect.

The facts alleged do not even remotely suggest that Greer did not honestly suspect fraudulent activity on the part of Davis, or that she was acting with any intent other than to fulfill the duty imposed upon her by federal law to ensure that the a patient did not receive a controlled substance without a legitimate prescription. *See* 21 C.F.R. § 1306.04(a). Davis has not alleged that Greer had any personal interest, pecuniary or otherwise, in reporting the suspicious information to law enforcement. In fact, Greer and Davis were totally unknown to each other before the events giving rise to the underlying lawsuit. There was simply no

56

conceivable reason for Greer to provide the information at issue to law enforcement other than crime prevention.

There are strong public policy considerations against an overly-restrictive application of § 54.1-3408.2. As one federal judge observed in the context of narcotic pain medication: "[a]lthough complicated, a working relationship between the medical community and law enforcement is essential to realizing the potential benefit that these substances hold for patients suffering from severe or chronic pain while avoiding their deleterious effects on society from rampant abuse and addiction." *U.S. v. Ilayayev*, 800 F. Supp.2d 417, 421 (E.D.N.Y. 2011). By enacting § 54.1-3408.2, the General Assembly clearly intended to permit pharmacists such as Greer and pharmacies such as Walmart's to report suspicious activity without fear of retributive litigation. Failure to apply the statute to these facts would frustrate the intent of the General Assembly, and pharmacists throughout the commonwealth will be fearful of reporting any suspicious or possibly criminal activity.

The allegations in the First Amended Complaint establish that Greer had a reasonable suspicion of criminal activity and made a good faith report of that activity to law enforcement. Accordingly, Greer and Walmart are immune from civil liability under § 54.1-3408.2, and Davis failed to state a claim under any of the state law theories she asserted.

## CONCLUSION

For the foregoing reasons, the District Court properly determined that Davis failed to state a claim for false imprisonment, IIED, assumption of duty, § 1983 civil conspiracy, medical malpractice, and negligence per se, and this Court should affirm the District Court's decision to dismiss said claims against Greer and Walmart.

## STATEMENT REGARDING ORAL ARGUMENT

This Court should not permit oral argument on this matter. The opinion of the District Court was correct and was firmly grounded in authority which properly disposed of all legal issues. To the extent this Court requires any further elucidation on any issue, the briefs of the parties provide a thorough examination of the facts and law of this case, further obviating the need for oral argument.

WALMART STORES EAST, L.P. &
BRENDA GREER

By Counsel

W. Bradford Stallard
(VSB No. 28149)
PENN, STUART & ESKRIDGE
P.O. Box 2288
Abingdon, Virginia 24212
Telephone: 276/628-5151
Facsimile: 276/628-5621
bstallard@pennstuart.com
dstone@pennstuart.com

By _/s/ W. Bradford Stallard_____
       W. Bradford Stallard

Terrence L. Graves
(VSB No. 32705)
Christopher K. Jones
(VSB No. 75051)
SANDS ANDERSON PC
1111 East Main Street
Suite 2400
Richmond, VA 23218
Telephone:  804-648-1636
Telefax:  804-783-7291
tgraves@sandsanderson.com
cjones@sandsanderson.com
*Counsel for Appellee Walmart Stores East, L.P*


By _/s/ Terrence L. Graves_____
       Terrence L. Graves

59

## CERTIFICATE OF COMPLIANCE

1.     This brief complies with the type-volume limitation of Fed. R. App. P. 28.1(e)(2) or 32(a)(7)(B) because this brief contains 13,985 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.     This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2013 in 14pt Times New Roman.

Dated: September 12, 2016            */s/ W. Bradford Stallard*
                                     Counsel for Brenda Greer

Dated: September 12, 2016            */s/ Terrence L. Graves*
                                     Counsel for Walmart

60

# CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Brief of Appellee Brenda Greer was filed electronically this 12th day of September, 2016. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt.  Parties may access this filing through the Court's system.  In addition, a true and correct copy of the foregoing was served upon the following, via first class mail, postage pre-paid:

Jonathan E. Halperin, Esq.
Isaac A. McBeth, Esq.
Halperin Law Center LLC
5225 Hickory Park Drive, Suite B
Glen Allen, VA  23059
*Counsel for Plaintiff-Appellant, Eve M. Davis*

Terrence L. Graves, Esq.
Christopher K. Jones, Esq.
Sands Anderson PC
1111 E. Main Street, Suite 2400
Richmond, VA 23219-0003
*Counsel for Wal-Mart Stores East, LP*

William W. Tunner, Esq.
Michael G. Matheson, Esq.
Thompson McMullan PC, Esq.
100 Shockoe Slip, Third Floor
Richmond, VA 23219
*Counsel for James V. Harney, Jr.:*

/s/ W. Bradford Stallard
W. Bradford Stallard
(VSB No. 28149)
PENN, STUART & ESKRIDGE

61

P.O. Box 2288
Abingdon, Virginia  24212
Telephone:  276/628-5151
Facsimile:  276/628-5621
bstallard@pennstuart.com